```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
GEORGE WATSON,
                                           04 Civ. 1119 (KMK) (DFE)
                 Petitioner,
                                           REPORT AND RECOMMENDATION
       -against-                           TO JUDGE KARAS

WILLIAM E. PHILLIPS, Superintendent,
Green Haven Correctional Facility,

                 Respondent.
------------------------------------------X
```

DOUGLAS F. EATON, United States Magistrate Judge.

    In this *pro se* habeas petition, George Watson challenges his conviction for Criminal Possession of a Weapon in the Third Degree. In 1995, his guilty plea was accepted in Supreme Court, Bronx County by Justice Ira Globerman. In 2000, Watson was sentenced to an indeterminate prison term of 2 1/3 to 7 years, to run consecutively to a sentence for a murder that he committed in 1997.

    On direct appeal, both briefs cited to the 1995 plea transcript and to the 2000 sentencing transcript. Those transcripts have not been submitted to me, but I find the record to be adequate without them. On February 23, 2005, Bronx Assistant District Attorney David Rong served an opposing affidavit, which annexed a memorandum of law and Exhibits 1 and 2. ADA Rong's affidavit says, at ¶ 4:

> Pursuant to Rule 5 of the Rules Governing § 2254 Cases, upon information and belief, on December 22, 2004 the transcripts of petitioner's state court proceedings were ordered by respondent from New York State Supreme Court (Bronx County), which is responsible for maintaining these records. These transcripts will be furnished to this Court if and when they are delivered to respondent from the storage facilities maintained by Bronx Supreme Court. Respondent is unaware of any minutes that have been recorded but not transcribed. However, it is respondent's position that the transcripts are unnecessary to the resolution of this matter, because: a) petitioner's claim is not cognizable on federal habeas corpus review; b) his subsidiary claims are

procedurally barred; and c) the pertinent parts of the
state proceedings were reproduced in the parties' state
appellate briefs. Indeed, the parties do not disagree
as to what the pertinent facts are (compare Exhibit 1,
at pp. 2-4 [petitioner's Appellate Division brief] with
Exhibit 2, at pp. 3-4 [respondent's Appellate Division
brief]). They disagree only on the legal significance
of the facts.

The appellate briefs contain detailed summaries of the plea
transcript and the sentencing transcript (with page citations)
and one lengthy quote from the plea transcript. I find the
record to be adequate without the actual transcripts. See a
similar finding by Judge Marrero in *Douglas v. Portuondo*, 232
F.Supp.2d 106, 109 n.1 (S.D.N.Y. 2002) (quoting Habeas Rule 5:
"If a transcript is neither available nor procurable, a narrative
summary of the evidence may be submitted.")

By letter to me dated March 2, 2005, Watson says that he
received respondent's answer and that he chooses not to reply.

For the reasons set forth below, I recommend that Judge
Karas deny Watson's habeas petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Citing to the Pre-Sentence Report, Watson's appellate
attorney, Joseph Lavine, noted as follows. Watson was born on
December 6, 1976 in Jamaica, West Indies, and arrived in New York
in 1984. At 16 years of age, Watson began drinking alcoholic
beverages on a daily basis. At 17, he became addicted to crack
cocaine. He left high school after completing the 11th grade,
apparently in New York City. At some point before May 19, 1995,
in an attempt to stop using drugs, he moved to Schenectady to
live with an uncle. (Exh. 1, p. 2.)

On May 19, 1995, in the Bronx, he had in his possession a
loaded .38 caliber gun. (Exh. 1, p. 2.) In an indictment filed
on June 28, 1995, a Bronx County grand jury charged him with two
counts -- Criminal Possession of a Weapon in the Third Degree and
the Fourth Degree. (Exh. 2, p. 3.)

On July 13, 1995, Watson appeared before Justice Globerman
and pleaded guilty to Criminal Possession of a Weapon in the
Third Degree. (Exh. 1, p. 2.) He was advised that, by pleading
guilty, he was "giving up his rights to trial by jury, to cross
examine witnesses, to remain silent, to call witnesses or testify
at trial, and to raise defenses." (Exh. 1, p. 3, citing Plea Tr.

6-7.)  Justice Globerman also said (with my emphasis in bold):

>    If I accept this guilty plea I'm promising to postpone your sentence for a year.  During that time **I'm going to require you [to] participate in a diversion program.**  I think run by the Fortune Society, but if not them, someone else.  During that year **you will be required to come to court periodically** so that I can keep an eye on your case, see how you're doing.  If you participate in that program and I tell you to participate in.  If you come to court every time I tell you that [and] someone else tells you to come to court.  **If you're not arrested between now and the time that you will be sentenced a year from now.  If you do those things I'm promising to sentence you to probation, and I'm going to consider adjudicating you a youthful offender** so that you won't have a criminal record.  I'm not certain about that, but I'm considering it.  Do you understand those promises?
>
>    **Do you understand that if you fail to keep even one promise to me**, if you get arrested from now and a year from now.  If you don't cooperate with the program I tell you to participate in, if you fail to come to court when you're told to come to court, if you do anyone of these things, **I will not keep my promise of probation to you.  You will get a felony conviction, a criminal record, and you will go to jail.  It could be for up to seven years**, but I tell you it's not going to be seven days either.  Do you understand that?

(Exh. 2, p. 3, citing Plea Tr. 3-4; accord, Exh. 1, p. 4.) Watson indicated that he understood these conditions, and that he had sufficiently consulted with his attorney and his mother.  He stated that no one threatened him to plead guilty, and he acknowledged that he received no promises in consideration for his guilty plea other than the promises and conditions stated by the judge on the record.  (Exh. 2, pp. 3-4, citing Plea Tr. 4 and 7-8.)  He admitted that, on May 19, 1995, in Bronx County, he possessed a loaded .38 caliber gun which was operational.  (Exh. 1, p. 2, citing Plea Tr. 5; Exh. 2, p. 4, citing Plea Tr. 13.)

   The judge adjourned the case to September 5, 1995.  Watson failed to appear on that date.  On July 11, 1996, he was arrested in Schenectady (perhaps on a Bronx bench warrant); he was convicted of resisting arrest and received a 30-day jail sentence.  On July 15, 1996, he was transported to the Bronx,

apparently in custody.  (Exh. 1, pp. 3-4.)

On August 20, 1996, the Department of Probation prepared a pre-sentence report; despite the intervening conviction, the report recommended that Watson be given a youthful offender sentence in the Bronx gun case.  (He had told Probation that he had possessed the gun for his own protection, and that he had failed to appear on the September 1995 court date because he was on drugs and forgot about it.)  On September 17, 1996, the Bronx court postponed sentencing and released Watson on his own recognizance.  He made his next three court appearances, but then failed to appear on May 9, 1997.  (Exh. 1, pp. 3-4.)

The circumstances preceding that failure to appear were as follows.  On April 11, 1997, Watson fired a gun into a crowd outside a Schenectady bar, killing one person and injuring two others.  He fled from Schenectady; on April 25, 1997, the Schenectady County District Attorney filed felony complaints against him.  Nearly three years later, he was arrested in Virginia and waived extradition to New York.  A Schenectady jury convicted Watson of murder in the second degree, and two counts of assault in the second degree, along with some lesser charges.  On October 31, 2000, he was sentenced in Schenectady County to three consecutive prison terms -- 25 years to life on the murder count, and 3 1/2 to 7 years on each of the two assault counts with respect to the two shooting victims who survived.  The above facts are recited in *People v. Watson*, 299 A.D.2d 735, 753 N.Y.S.2d 530 (3rd Dept. 2002).  *See also* Exh. 1, p. 4.  By my arithmetic, the total Schenectady sentence was 32 years to life.

Watson was then transported to the Bronx for sentencing in the case at bar.  On November 6, 2000, defense counsel stated that he was unaware of what had transpired in the past because he was not the attorney who had represented Watson in 1995 and 1996.  He requested that the matter be adjourned so that Watson's previous attorney could be reassigned to the case.  Justice Globerman denied the application.  The People requested the maximum sentence to run consecutively to Watson's existing murder sentence.  Watson asked for an adjournment so that he could withdraw his guilty plea, but the court found no basis to grant that request.  Justice Globerman then sentenced Watson to an indeterminate term of 2 1/3 to 7 years, to run consecutively to his Schenectady sentences for the murder and the two assaults.  The judge denied defense counsel's request for the sentence to run concurrently to those sentences.  (Exh. 1, p. 4; Exh. 2, p. 4, both citing to the Sentencing Tr.)

Shortly after the pronouncement of the relatively minor

sentence in the case at bar, Watson was transported back to Virginia.  Ten months earlier, in January 2000, when he was arrested on the Schenectady warrant by Virginia Beach officers, they discovered him to be in possession of some 619 grams of cocaine and a loaded handgun.  In June 2000, those crimes were charged in a federal indictment, Docket Number 2:00 Cr. 104 in the Eastern District of Virginia (Norfolk courthouse).  That case's docket sheet shows that Watson pleaded guilty, on March 12, 2001, to (a) conspiracy to distribute cocaine and (b) possessing a firearm while a fugitive from justice.  I have obtained a copy of the judgment signed on June 22, 2001 by District Judge Raymond A. Jackson; he imposed two concurrent sentences of 120 months each, to "commence upon the defendant's completion of the state prison sentence in docket number 100-24 in Schenectady, New York and docket number 4366-95 in Bronx, New York, or on August 1, 2022, whichever occurs earlier."

On November 19, 2002, the First Department, in a short order stating no reasons, unanimously affirmed Watson's conviction in the case at bar.  *People v. Watson*, 299 A.D.2d 975, 749 N.Y.S.2d 455 (1st Dept. 2002) and Exh. 3.  On January 30, 2003, Associate Judge Albert M. Rosenblatt denied leave to appeal.  *People v. Watson*, 99 N.Y.2d 586, 749 N.Y.S.2d 455 (N.Y. 2003) and Exh. 4.

On November 27, 2002, the Third Department affirmed Watson's convictions in the Schenectady shootings.  The unanimous opinion noted that (a) six eyewitnesses had testified that Watson fired his gun directly into a crowd of people, and (b) the jury rejected Watson's "testimony that there was a second shooter at the bar that night."  *People v. Watson*, 299 A.D.2d at 737, 753 N.Y.S.2d at 532-33 (3rd Dept. 2002), *leave denied*, 99 N.Y.2d 633, 760 N.Y.S.2d 115 (N.Y. 2003).  Watson also gives his version of the Schenectady shootings in his *pro se* petition in our Court, in an annexed Appendix at pages 10-12; at page 11 he writes: "Shots were still being fired until petitioner and his friend returned fire."

Watson's habeas petition was received by our Court's Pro Se Office on December 3, 2003.  On September 24, 2004, it was assigned to Judge Karas, and on December 1, 2004, he referred it to me for a Report and Recommendation.

In the case at bar, Watson has not filed any collateral challenge in any state court.  (2/23/05 Rong Aff. ¶ 10.)  As far as I can tell, he has filed no collateral challenge of any kind with respect to (a) the lengthy Schenectady sentence he is now serving, or (b) the federal sentence now scheduled to commence in 2022.

DISCUSSION

On direct appeal to the Appellate Division, Watson's assigned appellate attorney, Joseph Lavine, raised a single point:

> Whether Appellant's Sentence Of 2 1/3 to 7 Years, Consecutive To A Sentence Of 27 1/3 Years to Life, Was Excessive, Where At The Time Of The Offense Appellant Was An 18-Year-Old Drug Addict With No Prior Convictions.

(Exh. 1, p. 5.) Watson's *pro se* habeas petition raises that same point, as well as three new points.

1. The Excessive Sentence Claim

Watson's appellate attorney did not claim that the sentence violated the U.S. Constitution. Instead, he appealed to the Appellate Division's special discretionary power to reduce a sentence, and he cited cases where the First and Second Departments had reduced sentences, even though a defendant had failed to appear for sentencing or had been rearrested.

Criminal Possession of a Weapon in the Third Degree carried a maximum sentence of 7 years. New York Penal Law § 265.02(4), and § 70.00(2)(d), and 70.02(1)(c), (2)(c), (4), (5). Hence, the sentence Watson received was within the range prescribed by state statute. The Second Circuit has ruled, "No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (*per curiam*). Moreover, Watson has failed to show that the sentence "amounted to an arbitrary or capricious abuse of discretion" or that "an error of law resulted in the improper exercise of the sentencing court's discretion." *Bruno v. Cunningham*, 2004 WL 2290503, at *13 (S.D.N.Y. Oct. 8, 2004) (Mukasey, C.J.).

Accordingly, the length of Watson's sentence does not present a federal constitutional issue.

2. Petitioner's Unexhausted Claims

In his petition's Appendix, Watson raises three additional claims which were not presented to the Appellate Division and hence were not exhausted in the state courts. First. He claims that he was "deprived [of] adequate and effective legal representation when counsel brought to the attention of the Court

that he was not familiar with the terms of petitioner's plea agreement nor was he adequately prepare[d] for sentencing." (App. p. 13.)  <u>Second</u>.  He claims that his plea was involuntary and the judge erred in not allowing him to withdraw it.  (App. p. 14.)  <u>Third</u>.  He claims that "the State" breached the plea agreement; hence he was entitled to an evidentiary hearing or, at the Court's discretion, an expansion of the record.  (App. p. 14.)

Under 28 U.S.C. § 2254(b), a habeas petitioner must first exhaust his state court remedies by properly presenting his federal constitutional claims to the highest court of the state.  *Ramirez v. Attorney General of the State of New York*, 280 F.3d 87, 94 (2d Cir. 2001).  Watson's petition is a "mixed" one because it contains both exhausted and unexhausted claims; hence it can be dismissed on this ground alone.  *Rose v. Lundy*, 455 U.S. 509, 522 (1982); *Caballero v. Keane*, 42 F.3d 738, 740-41 (2d Cir. 1994).  However, the respondent argues that Watson's unexhausted claims should be (1) deemed exhausted yet procedurally forfeited because Watson no longer has any available state corrective procedures with respect to those claims, or (2) denied on their merits under 28 U.S.C. § 2254(b)(2).  (Resp. Memo. pp. 5-6.)

For the reasons discussed below, I recommend that these claims be denied on their merits.

    a.   <u>The Claim that Watson was Deprived of Effective Legal Representation at Sentencing</u>

At page 13 of his Appendix, Watson claims that he "was entitled to a reduced sentence because he was deprived [of] adequate and effective legal representation when counsel brought to the attention of the Court that he was not familiar with the terms of petitioner's plea agreement nor was he adequately prepare[d] for sentencing."

Watson is not criticizing his attorney.  Instead, he is criticizing Justice Globerman for not adjourning the sentencing to allow the new attorney more time to prepare.  But Watson fails to show that this resulted in real prejudice to him.

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct.2052 (1984), the U.S. Supreme Court held that a claim of ineffective assistance of counsel has two components.  The second component says, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution."  *Id.*, 466 U.S. at 692, 104

S.Ct. at 2067.  To show prejudice, the defendant must show that "there is a reasonable probability that . . . the result of the proceeding would have been different."  *Id.*, 466 U.S. at 694, 104 S.Ct. at 2068.

It is clear that the result of the sentencing proceeding would have been no different even if the judge had granted the new attorney more time to prepare.  At the plea, the judge had warned Watson that "if you fail to keep even one promise to me, if you get arrested . . . [then] you will go to jail.  It could be for up to seven years . . . ."  (Exh. 2, p. 3.)  After that, Watson did not merely "get arrested."  He received two convictions in Schenectady -- one for resisting arrest, and another for shooting three persons (one fatally).  By the time of the sentencing in the case at bar (his first gun case), it was obvious that he deserved no leniency.  No matter how well prepared his lawyer was, there is no reasonable probability that the result would have been more lenient than the sentence actually imposed.

### b. The Claim that the Plea was Involuntary

At page 14 of his Appendix, Watson claims that he should have been permitted to withdraw his plea.  In conclusory fashion, he says that the plea was "involuntary."  But he does not allege any facts that would contradict the plea record or show that his plea was involuntary.  At Watson's plea, the judge explained the conditions in detail.  (Exh. 2, p. 3, citing Plea Tr. 3-4; accord, Exh. 1, p. 4.)  Watson indicated that he understood these conditions, and that he had sufficiently consulted with his attorney and his mother.  He stated that no one threatened him to plead guilty, and he acknowledged that he received no promises in consideration for his guilty plea other than the promises and conditions stated by the judge on the record.  (Exh. 2, pp. 3-4, citing Plea Tr. 4 and 7-8.)

### c. The Claim that "the State" Breached the Plea Agreement

At pages 13 through 15 of his Appendix, Watson claims that he should have been allowed to withdraw his plea because the State breached the plea agreement.  Specifically, he argues that:

> . . . [A] sentence reduction was warranted when significant post-offense rehabilitative efforts were made which constitute an [sic] high acceptance of responsibility, [citations omitted]. . .
> \* \* \*

>       . . . The petitioner has demonstrated that the
> State breached a plea negotiation where petitioner has
> completed the C.A.S.E.S. Program.

(App. pp. 13, 14.)  It is not clear whether Watson completed all that his C.A.S.E. counselor required.  At page 10 of the Appendix, Watson says:

>       After several return Court appearances and a
> successful completion of the diversion program, the
> Court promised to sentence the petitioner to probation
> upon his return to Court [scheduled for] May 9, 199[7].
> After graduation at the C.A.S.E. office location in
> Manhattan, [his] C.A.S.E. counselor informed petitioner
> that he still had work detail to complete for thirty
> days at the recycling plant located in Schenectady New
> York.

At page 12, Watson suggests that he was still performing required community service at the recycling plant as of April 11, 1997, when he committed the shootings at a nearby club.

   In any event, the plea agreement required more than completion of the C.A.S.E. counselor's requirements.  It required Watson not to get arrested again before his sentencing in the case at bar.  His April 1997 shootings far outweighed what he calls his "rehabilitative efforts" after his 1995 gun offense.  The Schenectady District Attorney filed a homicide complaint against him on April 25, 1997; Watson was a fugitive for nearly three years, and that is why he failed to appear in the Bronx for his scheduled appearance of May 9, 1997.  Three years later, he had no right to a probation sentence.

## CONCLUSION

   For the reasons stated above, I recommend that Judge Karas deny Watson's habeas petition.

   Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, any party may object to this recommendation within 10 business days after being served with a copy (i.e. by December 30, 2005), by filing written objections with the Clerk of the U.S. District Court and mailing copies (a) to the opposing party, (b) to the Hon. Kenneth M. Karas, U.S.D.J. at Room 920, 500 Pearl Street, New York, NY 10007 and (c) to me at Room 1360, 500 Pearl Street.  Failure to file objections within 10 business days will preclude appellate review.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and*



*Human Services*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), and 6(e). Any request for an extension of time must be addressed to the District Judge.

                           *[signature]*
                           DOUGLAS F. EATON
                           United States Magistrate Judge
                           500 Pearl Street, Room 1360
                           New York, New York 10007
                           Telephone: (212) 805-6175
                           Fax: (212) 805-6181

Dated:      New York, New York
              December 12, 2005

Copies of this Report and Recommendation were sent on this date by mail to:

George Watson
00-A-6146
Attica Correctional Facility
Exchange Street
Attica, NY 14011-0149

David Rong, Esq.
Assistant District Attorney
District Attorney, Bronx County
198 East 161st Street
Bronx, NY 10451

Hon. Kenneth M. Karas